IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OFFICE OF THE U.S. TRUSTEE : | |
| : | |
| v. : | |
| : | Civil Action No. CCB-08-755 |
| FIELDSTONE MORTGAGE COMPANY : | |

...o0o...

## MEMORANDUM

Now pending before the court is an appeal from an Order by the United States Bankruptcy Court for the District of Maryland. The parties have fully briefed the issues and no oral hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the bankruptcy court's order will be reversed.

## BACKGROUND

Fieldstone Mortgage Company ("Fieldstone"), the debtor in this case, was a national mortgage banking company that originated and sold conforming and non-conforming residential mortgage loans secured by residential real estate. In 2006, it originated approximately $5.5 billion of mortgage loans. As of July 31, 2007, it had about 1,200 employees.

Due to problems in the mortgage market that became apparent in 2006, Fieldstone faced increasing liquidity difficulties, and ultimately had to file for Chapter 11 bankruptcy. At the time it filed for bankruptcy, November 23, 2007, its workforce had been reduced to about 50-60 employees. In order to retain certain valued employees during bankruptcy, Fieldstone filed a

motion pursuant to §§ 105[1], 363[2], and 503[3] of the Bankruptcy Code ("Code") on January 10, 2008, requesting implementation of an employee incentive plan – commonly referred to as a Key Employee Retention Plan or KERP – for 23 of its remaining employees, which would allow it to pay them bonuses ("KERP Motion"). After opposition from the U.S. Trustee, which argued that at least some of these employees were "insiders" under § 101(31)(B) of the Code[4] and were

---

[1] Section 105 of the Code reads, in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a).

[2] Section 363 of the Code reads, in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

[3] Section 503 of the Code, which pertains to KERPs, reads, in pertinent part:

[T]here shall neither be allowed, nor paid--
(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that--
(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
(B) the services provided by the person are essential to the survival of the business
. . . .
11 U.S.C. § 503(c)(1).

[4] Section 101(31)(B) of the Code offers the following definition of "insider":

The term "insider" includes . . .
(B) if the debtor is a corporation--
(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer, or person in control of the debtor[.]

11 U.S.C. § 101(31)(B).

therefore barred from such retention payments under § 503(c)(1) of the Code, Fieldstone reduced the number to seven.  These seven employees and their titles, as reported by Fieldstone, are as follows:

| | |
|---|---|
| Jennifer L. Bliden | Vice President[5] |
| Thomas S. Brennan | V.P. & Acting General Counsel[6] |
| John C. Camp | Sr. V.P. & Chief Information Officer |
| Nancy J. Maradie | V.P. & Assistant Secretary Treasurer |
| Teresa A. McDermott | Sr. V.P. & Controller |
| Jacqueline "Jacqui" Smith | Vice President[7] |
| William "Bill" L. Wolfe | Vice President[8] |

Fieldstone Statement of Financial Affairs ("Fieldstone SOFA") at 9 & Ex. 23.  In its SOFA, Fieldstone listed these names in response to Question 21(b), which states: "If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting securities of the corporation."  Fieldstone SOFA at 9.[9]  All of these persons, then, were reported by Fieldstone to be officers, each holding a title of Vice President or above.[10]  These seven persons were also among those listed in response to Question 23 of the SOFA, which states: "If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider . . .

---

[5] Ms. Bliden was listed elsewhere as "VP, Systems."  Fieldstone SOFA at Ex. 23.

[6] Mr. Brennan was listed elsewhere as "VP, Legal Counsel."  Fieldstone SOFA at Ex. 23.

[7] Ms. Smith was listed elsewhere as "VP, Licensing."  Fieldstone SOFA at Ex. 23.

[8] Mr. Wolfe was listed elsewhere as "VP, Facilities."  Fieldstone SOFA at Ex. 23.

[9] The only entity listed as holding any stock whatsoever in response to this question was Credit-Based Asset Servicing & Securitization LLC.  *Id.*

[10] It should be noted that Fieldstone at one point employed approximately 60 persons with the title Vice President.  *See* Fieldstone SOFA at Ex. 22(b).

." Fieldstone SOFA at 10.  The SOFA was signed by Fieldstone President and CEO Michael J. Sonnenfeld.

On February 20, 2008, the bankruptcy court held a hearing on the KERP motion as it applied to these seven employees, in order to determine whether the bonuses requested for them were permissible under the Code.  In that hearing, Mr. Sonnenfeld was questioned extensively about the nature of their positions.  When asked why persons at Fieldstone were given the title "Vice President," Mr. Sonnenfeld replied that the title "was an honorarium that was given to people that had to deal on a regular basis with outside counterparties." Tr. at 70.  He continued, though, to say that at least some vice presidents, by virtue of their title, could perform mortgage trades on behalf of the company, *id.*, and that others could sign or issue checks or wire transfers on behalf of the company.  *Id.* at 74.  He also admitted that the position was created by board appointment.  When asked, "All of the seven are officers of the company appointed by the Board, is that correct?" Mr. Sonnenfeld answered "Yes."  Tr. at 116.

With respect to the job responsibilities of these seven employees in particular, Mr. Sonnenfeld said that they were the heads of their respective departments.  *Id.* at 76-77.  Ms. Bliden was responsible for all of the computing systems at Fieldstone (which was a computer-driven company) and the maintenance of its firewalls.  *Id.* at 86.  Mr. Brennan, as acting general counsel, reviewed all of the legal documentation generated by and for Fieldstone.  *Id.* at 96.  He also helped oversee Fieldstone litigation across the country.  *Id.* at 98.  Mr. Camp's position required him to protect data involving $12 million in investments.  *Id.* at 85.  Ms. Maradie's position involved paying all vendors and employees of Fieldstone, and generally managing its cash.  *Id.* at 89. Ms. McDermott performed all of the reporting requirements for the company,

for instance its statements of financial affairs. *Id.* at 94. Ms. Smith's position involved maintaining Fieldstone's licenses (to buy and sell mortgages) and surety bonds in all 50 states. *Id.* at 90-92. Mr. Wolfe's position involved providing and maintaining equipment for over 90 Fieldstone offices across the country. *Id.* at 79. Since Fieldstone has begun operating in bankruptcy, his position has involved selling Fieldstone's assets across the remaining offices, including negotiating court-approved asset sales. *Id.* at 81. In short, Mr. Sonnenfeld's testimony demonstrated that each of the seven individuals were board-appointed officers who exercised extensive control over various facets of Fieldstone's corporate operations.

At the conclusion of the hearing, the bankruptcy court ruled that bonuses to these seven employees were permissible under the Code because it found them not to be officers under § 101(31)(B)(ii), and therefore not insiders under § 503(c)(1). It offered the following explanation for this ruling:

> I think in the decision I'm making, I am applying the law. And what I'm basically saying is that I don't see that . . . the seven individuals that are the subject of this controversy are either officers in the traditional technical sense, nor would they have been considered to be insiders if there was a complaint filed to recover preferences or fraudulent conveyances from any of them.
> And the reason for that is even though the definition . . . identifies officers among a list of individuals who are characterized by the Bankruptcy Code definitions as insiders, the Court is not precluded by the terminology that I used from taking evidence from behind the titles that people hold in any given situation. And so I find, first of all, that these vice presidents, despite the title that they enjoy, are holders of honorary titles that have no relationship whatsoever to . . . traditional officers in a corporation . . . .
> [T]he question is whether they are officers in the traditional sense, in the sense that they are making decisions, they're acting on behalf of the corporation, they are in charge, they are insiders. And I find that none of these seven qualify either as officers or as insiders. And what that means is that 503(c)(1) is not applicable to this situation.

Tr. at 140-41.[11]  In short, the bankruptcy court, while acknowledging that the seven employees might appear to fit the legal definition of officer (and thus insider) under the Code, found that they did not in fact resemble officers in the "traditional sense," and so could not be considered insiders.

The court issued an order authorizing Fieldstone to implement its employee incentive plan on February 27, 2008.  On February 28, 2008, the U.S. Trustee filed a notice of appeal and an emergency motion for a stay pending appeal.  This emergency motion was denied.  The U.S. Trustee filed the present appeal on March 20, 2008, contending that the bankruptcy court's conclusion regarding the seven Fieldstone employees was in error.

## ANALYSIS

This court reviews the bankruptcy court's findings of fact for clear error, *see* Fed. R. Bankr. P. 8013, and its conclusions of law and statutory interpretation de novo.  *See In re Off'l Comm. of Unsecured Creditors*, 453 F.3d 225, 231 (4th Cir. 2006); *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 483 (4th Cir. 1994); *Wolff v. United States*, 372 B.R. 244, 248-49 (D. Md. 2007).  To the extent that this appeal concerns the proper interpretations of "officer" and "insider" under § 101(31)(B)(ii), review is de novo.  To the extent that it also concerns questions of fact – namely,

---

[11] Section 503(c)(1)(A) provides a separate ground for finding a bonus to an insider to be permissible, namely when the bonus is essential to the retention of an insider who has a bona fide job offer from another business.  Mr. Sonnenfeld testified at the hearing that Mr. Brennan had a job offer from another business during the relevant time period, Tr. at 97, however the bankruptcy court did not make any findings of fact regarding this testimony, presumably because it found § 503(c)(1) to be inapplicable.  Moreover, no inquiry was made into the job offer's bona fides or its rate of compensation.  Fieldstone does not argue in its appeal brief that Mr. Brennan's bonus is warranted under § 503(c)(1)(A).

whether under the appropriate legal standard they are officers, based on the fact of their titles, their board appointment, their listings in the SOFA, and their responsibilities – the court applies a hybrid standard, examining the factual portions for clear error and the legal conclusions derived from those facts de novo. *See In re Three Flint Hill*, 213 B.R. 292, 297-98 (D. Md. 1997) (considering "insider" status as a mixed question of law and fact).

The central issue in this appeal is whether the bankruptcy court correctly interpreted the term "officer" for purposes of § 101(31)(B)(ii). While the Bankruptcy Code does not offer a legal definition for "officer," the term has had wide application in corporate law, and has been defined in other corporate statutes. The Clayton Antitrust Act, for example, defines the term "officer" to mean "an officer elected or chosen by the Board of Directors." 15 U.S.C. § 19(a)(4). The Model Business Corporation Act ("MBCA"), adopted by the American Bar Association, defines "officer" simply as a position "described in [the corporation's] bylaws or appointed by the board of directors in accordance with the bylaws." Model Bus. Corp. Act § 8.40 (2002).[12] Although the Maryland Code does not define "officer" in the corporate context, it does list "elect officers" as one of the duties of corporate directors. Md. Code, Corps. & Ass'ns § 2-109(a)(1). *Accord* Md. Code, Educ. § 16-502(f) (defining the officers of the Baltimore City Community College as "the president and the vice presidents of the College and other officers as shall be

---

[12] *See also* Black's Law Dictionary 1117 (8th ed. 2004) ("In corporate law, the term [officer] refers esp. to a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer."); *Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1367 (Fed. Cir. 2006) ("The magisterial Oxford English Dictionary defines 'officer' as, among other things, 'a person authoritatively appointed or elected to exercise some function pertaining to public life, or to take part in . . . the management or direction of a public corporation, institution, etc.'").

appointed by the Board of Trustees").[13]

As these statutes show, the fact of board appointment or election is frequently identified as distinguishing "officer" positions from other titled positions within a corporation. *See* 2 William Meade Fletcher, Cyclopedia of the Law of Private Corporations § 266 ("One distinction between officers and agents of a corporation is the manner of their creation. An office is created by the charter of the corporation, and the officer is appointed or elected by the directors or the shareholders." (internal footnote omitted)); *see also In re NMI Systems, Inc.*, 179 B.R. 357, 360 (Bankr. D. D.C. 1995) (noting that a corporation's election of a person to a vice-president position indicates the formal conferring of officer status upon him). As such, when making the threshold determination of whether a titled position fits the legal definition of officer, other features of that position, such as its range of corporate duties and responsibilities, are less relevant.[14] Most relevant is board appointment or election; if that feature is present, as it is here,

---

[13] The Delaware Code, often used as a point of reference on corporate law matters, defines "officer" in this way:

> "Officer" means[,] [i]f used with respect to a corporation, a person appointed or designated as an officer of such corporation by or pursuant to applicable law or the certificate of incorporation or bylaws of such corporation, or a person who performs with respect to such corporation functions usually performed by an officer of a corporation.

Del. Code Ann. tit. 5, § 3303(14); *see also* Alaska Stat. Ann. § 10.13.990(13) (identical language to the Delaware Code); Minn. Stat. Ann. § 302A.011(18) ("'Officer' means a person elected, appointed, or otherwise designated as an officer by the board, and any other person deemed elected as an officer"); Mont. Code Ann. § 32-11-102(15) (nearly identical language to the Delaware Code); Tenn. Code Ann. § 45-8-203(16) (identical language to the Delaware Code).

[14] Indeed, the law does not require an officer to have extensive corporate duties in order to fit the legal definition of "officer." The MBCA states that an officer's duties are no more or less than those "set forth in the bylaws or . . . prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers." Model

the titled position ordinarily is an "officer" position as a matter of law. Insofar as the bankruptcy court understood the definition of "officer" to require additional "traditional" elements, like major decision-making, it expanded the term beyond its ordinary legal meaning.

A related issue in this appeal is whether it was proper for the bankruptcy court to conduct a separate factual inquiry into the authority exercised by the seven employees in order to determine whether they were therefore officers and insiders under the Code. The statute is unambiguous on this matter; if a person is found to be an "officer" as a matter of law, then they are automatically deemed an "insider" as a matter of law as well, and the inquiry ends. Section 101(31)(B) declares that an "insider" includes, among other persons, a "director of the debtor" and an "officer of the debtor" (where the debtor is the now-bankrupt corporation). *See Public Access Technology.com, Inc.*, 307 B.R. 500, 506 (E.D. Va. 2004) ("an officer of the debtor during the relevant period . . . [is] thereby an 'insider'" under the Code); *In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986) (stating that, under the Code, "any person that is a director of a corporate debtor . . . is automatically considered to be an insider"). In *Public Access*, the court explained the proper interpretation of the Code's "insider" provisions as follows:

> The Bankruptcy Code defines an "insider" to be, among others, a director of the debtor, an officer of the debtor, or a person in control of the debtor. 11 U.S.C. § 101(31)(B)(i)-(iii). It is unnecessary for a court to determine whether an individual is both a director and a person in control, or both an officer and a person in control, as the statutory definition is clearly stated in the disjunctive. A defendant's status as

---

Bus. Corp. Act § 8.41 (2002). Rule 3b-2 of the Securities Exchange Act of 1934 – which defines "officer" to be "a president, vice president, secretary, treasury or principal financial officer, comptroller or principal accounting officer" – states that the duties of an officer are simply "routinely performing corresponding functions with respect to any organization." 17 C.F.R. § 240.3b-2.

a director or an officer is alone sufficient to establish that he is an insider. 307 B.R. at 505. Thus, the logical reading of the statute is simply that those fitting the legal definition of "officer" are automatically insiders under the Code, regardless of their degree of control over the company.

Because the bankruptcy court viewed the term "officer" as encompassing more than the fact of board appointment or election, its decision to peer "behind the titles" of the seven Fieldstone employees for further evidence of their officer and insider status is understandable.[15] It is true that, "[w]here . . . the defendant's status as a director or officer is disputed, some inquiry beyond the defendant's title will ordinarily be required." *Public Access*, 307 B.R. at 506 n.5. This is precisely what took place in *Public Access* and *NMI Systems*; in both cases, the disputed officers were not elected or appointed by the Board, and so further factual inquiry was justified. *See Public Access*, 307 B.R. at 506; *NMI Systems*, 179 B.R. at 370-71.

---

[15] Under other circumstances, a factual inquiry would be in keeping with the aims of the Code's "insider" provisions, which are meant to extend "insider" status to more than just those listed specifically by statute. As one bankruptcy court has explained:

> The Code's use of the word "includes" is intended to denote a general class for which the statute provides a nonexhaustive list of members. As [the Code] makes clear, the terms "include" and "including" are not limiting. . . . An insider may, therefore, be a person or entity other than those enumerated in [the Bankruptcy Code], provided the particular relationship meets these guidelines. In such cases, contemporary insider analysis invites the Court to consider whether the disputed relationship is similar to or bears characteristics of any of the relationships specified in the statute.

*In re Gilbert*, 104 B.R. 206, 209-210 (Bankr. W.D. Mo. 1989) (internal citations omitted); *see also Butler v. David Shaw*, 72 F.3d 437, 443 (4th Cir. 1996) ("It is well settled that the statutory definition of insider is not exhaustive"); *In re Schuman*, 81 B.R. 583, 586 (9th Cir. Bankr. App. Panel 1987) ("courts have widely agreed that Congress did not intend to limit the classification of insiders to the statutory definition").

The Code's "person in control" clause offers one way for courts to bring persons titled but not appointed as officers under the heading "insider." 11 U.S.C. § 101(31)(B)(iii). But control, as the court in *Public Access* made clear, is an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders. *See* 11 U.S.C. § 101(31)(B)(iii); *see also In re Cardon Realty Co.*, 146 B.R. 72, 78 (Bankr. W.D.N.Y. 1992) ("It is irrelevant whether [an officer and director] actually 'controlled' [the debtor corporation]"). The Code does not declare that an insider is a "director of the debtor, officer of the debtor, or *other* person in control of the debtor." Nor does it state that an insider is one who is a director or officer of the debtor *and* person in control of the debtor. Simply put, a straightforward application of the statute should render duly appointed or elected officers "insiders," regardless of their degree of "control."[16] *See Public Access*, 307 B.R. at 505 (stating that giving the "insider" portion of the Code a different meaning would "do violence to the plain meaning of the statute").

In this case, the undisputed fact that these seven persons all had been appointed as

---

[16] Indeed, as the U.S. Trustee argued in this case, to read the statute differently would lead to absurd results. *See Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 583 (4th Cir. 2006) (noting "the settled rule that a court must, if possible, interpret statutes to avoid absurd results"). For one, if an officer or director were required to be a "person in control" as well, the officer and director clauses would be superfluous. Also, if an officer or director were required to be a "person in control" as well, why would she not be additionally required to be a "relative" under § 101(31)(B)(vi)? Finally, if the court were to accept Fieldstone's assertion that the terms "officer" and "director" are meant to capture persons "in control," what does this mean for the "relatives" provision, since relatives are frequently not persons in control and yet insiders? *See, e.g.*, *Matter of Hunt*, 154 B.R. 1016, 1021 (Bankr. M.D. Ga. 1993) (husband of debtor's niece found to be an "insider" as a matter of law simply because he was a relative of the debtor); *In re Trans Air, Inc.*, 78 B.R. 351, 352-54 (Bankr. S.D. Fla. 1987) (wife of businessman found to be "insider" as a matter of law, even though she had no role in the day-to-day affairs of her husband's business).

officers by the Board should have been sufficient to establish their officer status as a matter of legal interpretation.[17] Section 503(c)(1) therefore applies to prevent the seven Fieldstone officers from receiving bonuses as part of an employee incentive plan.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's ruling must be reversed. A separate Order follows.

  November 5, 2008                                          /s/
Date                                              Catherine C. Blake
                                                  United States District Judge

---

[17] Even if board appointment were held insufficient, however, the bankruptcy court's factual conclusion that the seven were not officers would be clearly erroneous in light of the combined facts of title, board appointment, job responsibilities, and identification as officers and insiders in the company's filings.